FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

DEC 15 2011

JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

| | |
|---|---|
| **KEVIN JONES,** | Case No.: 4:11-CV-889 JMM |
| **Plaintiff** | |
| vs. | **COMPLAINT** |
| **MARK FROST, GARY DUNN, and JAMES BACON,** | This case assigned to District Judge Moody and to Magistrate Judge Ray |
| **Defendants** | |

Plaintiff, Kevin Jones ("Kevin") states as follows for his cause of action against defendants Mark Frost ("Frost"), Gary Dunn ("Dunn"), and James Bacon ("Bacon");

### Parties

1) Kevin is a resident of Little Rock, Arkansas.

2) Frost is a resident of Russellville, Arkansas, and was a police officer at all pertinent times. He is sued in his individual and official capacities.

3) Dunn was a resident of Russellville, Arkansas, at all pertinent times. He has been released from custody and his whereabouts are unknown.

4) Bacon was a resident of Russellville, Arkansas, and was its Chief of Police at all pertinent times. His present location is Nixa, Missouri, where he serves as a policeman. He is sued in his individual and official capacities.

1

**Jurisdiction and Venue**

5) This action seeks to redress violations of Kevin's constitutional rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. Jurisdiction is fixed by 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 42 U.S.C. § 1983.

6) Venue in the styled Court is proper.

**Background**

7) Nona Dirksmeyer ("Nona"), a pretty and talented Arkansas Tech co-ed, was brutally attacked and murdered in her Russellville apartment on December 15, 2005 by Dunn. She was nineteen.

8) Frost was the Russellville police department's criminal investigation detective and was the lead investigator in the "Dirksmeyer" homicide.

9) Bacon was the Russellville Chief of Police at the time.

10) Kevin was Nona's boyfriend, who, in the company of his mother and a friend, discovered Nona's lifeless body in her apartment on the 15th. Kevin and Nona were contemplating marriage.

11) The defendants aided and abetted one another in a conspiratorial scheme to withhold evidence and falsify information toward having Kevin charged and prosecuted for Nona's murder, rather than Dunn. All in violation and contravention of the requirements of *Brady vs. Maryland*, 373 U.S. 83 (1963) and

Rule 17.1 (d), Ark. Rules Crim. Pro., that mandate disclosure of exculpatory evidence.

12)   Kevin was charged with 1st Degree Murder and acquitted by jury verdict. Subsequently, Dunn was charged with Nona's homicide that resulted in two trials, both declared mistrials because the juries were unable to reach a verdict.

### The Conspiracy

13)   Dunn, Frost and Bacon engaged in a conspiracy, as hereinafter detailed, with a common purpose of protecting Dunn from prosecution in order to have Kevin prosecuted for Nona's murder. The defendants had a meeting of minds, tacitly agreed to a conspiracy and committed the following overt acts in concert:

(A) Dunn knowingly made false statements to support a false alibi that he was away from Nona's apartment complex during the established time interval when Nona was murdered;

(B) Frost investigated the alibi and conclusively determined it was false;

(C) Frost lied to Prosecutor David Gibbons by telling him that Dunn's alibi cleared him;

(D) Bacon also knew the alibi was false but pointedly did not advise the prosecutor. Further, he made public statements that others (than Kevin) had been ruled out;

(E) Dunn lied to polygrapher, Bill Glover, by stating he didn't cause Nona's death;

(F) Dunn told Frost he had some sort of "heart" condition;

(G) Frost inquired of the polygrapher "How did he do?" and Glover responded that Dunn was deceptive and that his breathing was all "f'ed up." Then Frost insinuated that the claimed heart condition influenced the test, to which the polygrapher replied "I'll say he passed." Frost successfully lobbied the polygrapher to slant his findings in Dunn's favor in order to further deflect a prosecutorial focus;

(H) Frost falsely informed the prosecutor that the FBI "Behavioral Science" team supported his conclusion that Kevin staged the crime scene, faked a later discovery and handled Nona's body to provide an explanation for blood that theoretically (Frost's hunch) might have been on his (Kevin's) clothing prior to discovery of Nona's body;

(I) Bacon purposely failed to secure the Lowes' video surveillance tape that would have further confirmed that Dunn wasn't there as he said he was in one version of his alibi;

(J) Frost purposely failed to obtain DNA testing of the condom wrapper found at the crime scene that excluded Kevin and which, upon later, further analysis, was found to have Dunn's DNA on it; and

(K) Frost didn't cooperate with a subsequent Arkansas State Police investigation by refusing to give over his investigative notes that contained, inter alia, proof of Dunn's false alibi. The state police investigator had made two requests.

### Frost and Bacon Inform Nona's Family and Request That The Prosecutor Charge Kevin with Murder

14) Six days after the murder, Frost and Bacon, on December 21st, made a late night visit to Nona's family and persuaded Carol Dipert, Nona's mother, against her announced, better judgment to the contrary, that Kevin had killed her daughter.

15) Nona was buried the next day, December 22nd. Because Frost and Bacon had fingered Kevin, he was not allowed to sit with the family. Bacon, in a pre-funeral news conference, announced that they knew the identity of the killer.

16) In the interim between Frost's and Bacon's secret disclosure to Nona's family and the formal filing of a 1st Degree Murder charge against Kevin, they fanned and inflamed public opinion through news releases and reports to the local paper, *The Courier*, with the dual purpose of basking in glory and to pressure prosecutor David Gibbons to file charges.

17) It is a necessary custom and practice that prosecutors rely upon the thoroughness and integrity of law enforcements' investigation as predicate to file criminal charges.

18) The passage of more than three months between the time law enforcement investigators "have their man" until formal charges were filed is an inordinate amount of time, in these particular circumstances. Indeed, Gibbons' learned evaluation of the case against Kevin was that it was premature and hasty.

19) Nevertheless, Bacon pressed Gibbons to file a murder charge against Kevin and induced Nona's misled family and the local paper to pressure Gibbons. Gibbons had prosecuted Dunn for the Bona Dea assault, infra, and was aware of Dunn's proximity and predatory inclinations but Frost told him that Dunn's alibi assuredly put him away from the crime time-line which induced Gibbons to charge Kevin.

### Dunn's Violent Assault On The Bona Dea Jogger; Frost's Involvement; Dunn's Proximity To Nona And Similar Modus Operandi

20) About four years before he killed Nona, Dunn violently assaulted the "Bona Dea jogger", an attractive twenty-five year old female, with an intent to rape and kill her.

21) Around 1:30 in the afternoon on August 25, 2002, Kelly Jo Fitzharris, ("Kelly") jogged past Dunn as he sat on a bench near the park's[1] entrance. Upon hearing rapid footsteps closing behind her, she turned to see Dunn brandishing a large tree limb raised to strike her.

---

[1] Bona Dea state park abuts Russellville on the city's western boundary and lies between the city and Lake Dardanelle to the east.

22) Dunn clubbed Kelly to the ground, pummeled her face with his fists in a rage and twisted her neck while yelling "I'm going to kill you, you f'king bitch". Because of her fitness and instinct to survive, Kelly wrestled free and escaped on foot.

23) Dunn was apprehended, charged and tried. His explanation was that Kelly was an ex-girlfriend and there was a dispute about a child, an absolute lie. Kelly had never seen Dunn before. He was sentenced to a six year term and was admitted to prison on May 2, 2003, and was released to supervised parole on May 19, 2004, and thereafter ensconced himself in an apartment that looked down upon Nona's apartment where he similarly attacked, again with a club of opportunity (lamp base), and bludgeoned Nona to death.

24) Frost knew of Dunn's criminal compulsion to attack women. He participated in the Bona Dea investigation and prosecution but he didn't know that Dunn was living up and across the way (parking lot) from Nona's until after he had already hypothesized that Kevin killed Nona in a jealous rage. At that point the investigation was concluded in Frost's mind because the case was being driven by his ego rather than by a search for the truth and a desire to protect the public.

### Dunn's Parole Officers' Tip to Russellville's Police

25) Parole Officer Jamie Keys, who supervised Dunn's parole, astutely became aware of the proximity of Nona's apartment, where she was murdered, to

Dunn's apartment in the same complex, Inglewood Apartments. She consulted with fellow Parole Officer William Titsworth who telephoned the Russellville Police Department and told Detective Michael Joe Hemmer of Dunn's previous conviction for a violent assault on the Bona Dea jogger and his proximity to Nona's apartment, on December 20, 2005. They were doing their job.

26) Some nine days later, Frost belatedly interviewed Dunn. In the meantime Frost and Bacon had already concluded that Kevin murdered Nona, albeit bottomed on a hunch.

### Interview Of Dunn, His Alibis And Frost's Determination That They Were False

27) On or about December 29, 2005, Dunn told Frost in an interview, that he was unwell on December 15th and didn't go to work. He went to his mother's (Martha Dunn) to lay on the couch and later made trips to several places that accounted for his whereabouts during the time interval from 11:00 a.m. to 1:00 p.m. on December 15th, established by pathologists as the time-of-death range.

28) Specifically, Dunn told Frost that he and his mother went to Lowes around 11:00 a.m.; then to AutoZone; then to B&W Supply, and finally to a veterinarian's clinic, all in the Russellville and surrounding area on the 15th, which covered the established time interval.

29) Frost's field notes indicates that he reviewed the records of each business and the transactions of the Martha Dunn debit/checking bank account and

determined that the AutoZone, B&W Supply and the vet clinic transactions occurred on December 13th and the Lowes transaction took place on the 14th. Below those notations, Frost wrote "No Transactions on 12/15". Frost well knew that Dunn's alibi was false. Frost never submitted his field notes to Gibbons, consequently, highly exculpatory evidence never made it to Kevin's defense attorneys. Yet, he furnished the notes to Dunn's defense attorneys which influenced their decision not to put Dunn on the stand in his trials.

30) Present counsel here, only became aware that the notes might exist through serendipitous happenstance during their investigation of whether Kevin had a case or not. But because of previous "gag orders" imposed by the state court, Kevin's present attorneys only obtained Frost's field notes last October 17th, which confirmed suspicions that Frost withheld crucial evidence of Dunn's guilt and Kevin's innocence from Prosecutor Gibbons and Kevin's defense attorneys.

### The DNA Evidence

31) Frost did not have the condom wrapper found at the scene tested for DNA. However, Kevin's attorneys requested that the wrapper be examined and tested. It was and male DNA was found. But it wasn't Kevin's, albeit strong evidence of Kevin's innocence, which was a significant factor in convincing the jury to find him "not guilty".

32) Todd Steffy, a part-time Dover police officer, college professor and minister got involved in the investigation. After Kevin's acquittal, he asked Dunn, whom he had questioned about a theft from his (Dunn's) stepfather, to give a saliva sample. He did and the sample was sent for comparison with the unknown male DNA, supra, and the results were positive. Dunn's DNA was at the murder scene and that's because he was there killing Nona on December 15, 2005.

33) Following Kevin's acquittal, Jennifer Dunn, defendant Dunn's wife, gave a statement and testified on the stand in Dunn's murder trials that Dunn practiced bestial, anal sex and ritually opened a condom with his teeth. Tooth impressions are plainly visible in the forensic photographs. The condom wrapper found at the scene had been opened by Dunn's teeth, as was his custom.

34) Nona was found nude, lying face down.

### Dunn's Two Deadlocked Juries and Release

35) Nona's murderer, Dunn, went through two jury trials that resulted in deadlocks. His skillful attorneys, appointed by the state, argued, with Frost's eager testimonial help, that Kevin staged the crime scene after murdering her.

36) Dunn has been released and is back amongst the general population. It is unlikely that he will be retried. To this extent, Dunn's, Bacon's and Frost's, conspiracy has been successful.

37) However, Dunn is a compulsive, but somewhat calculating, misogynist and sexual predator. He stalked Nona and struck with an intent to sodomize her. He overpowered and bludgeoned her with a lamp base. He stabbed her with his knife in a frenzy. When life was leaving her he removed her clothing and tore open the condom wrapper. By then Nona was either dead or so lifeless that she appeared dead. Dunn left her apartment covered in her blood. But he left the condom wrapper with enough of his spit on it for analysis, supra.

38) In all, Nona was sexually assaulted and murdered in the process.

39) Bacon and Frost let pride and ego direct their actions. Having prematurely decided and announced to a clamoring public that Kevin was Nona's killer, they pointedly ignored and covered up evidence of Dunn's guilt. They, and of course Dunn, were quite willing to send an innocent man, this plaintiff, to prison for the rest of his life, let Nona's killer go free and allow him to continue his deadly predations on women, to boot, just to save face.

40) Had Frost told Prosecutor Gibbons that truth that Dunn's alibi was false, then, given Dunn's proximity to Nona and his past predation on the Bona Dea jogger, Prosecutor Gibbons would not have charged Kevin.

### State Action

41) Frost and Bacon were state actors acting under color of law and their conspiratorial conduct, along with Dunn's, deprived Kevin of liberty and property

without procedural and substantive due process of law, violative of the Fifth, Sixth, and Fourteenth Amendments to the United Stated Constitution, that secures to every citizen, procedural and substantive due process.

## Damages

42)   Because of constitutional deprivations, Kevin was wrongfully charged and prosecuted in a jury trial.  Even though he was acquitted, he suffered extreme apprehension and mental anguish. His good name and reputation has suffered. Indeed, he was denied admission to Arkansas Tech because of the accusations against him engendered by defendants.  The emotional trauma is embedded in his psyche and will be lifelong.  He is indebted to his parents, Hiram and Janice Jones, who sold their home and business to cover the expenses of defending their son. They liquidated their lifelong accumulations and expended $500,000, for which sum Kevin is obligated to repay.  In all, Kevin's compensatory damages have a monetary value of $5,000,000.

43)   Because defendants' actions were willful, deceitful and intentionally malicious with a purpose to injure and damage Kevin, exemplary damages should be assessed for $5,000,000.

## Jury Trial

44)   Kevin demands a jury trial.

## Prayer

Wherefore, plaintiff prays that he be granted judgment against defendants, Gary Dunn, Mark Frost and James Bacon, jointly and severally, for $5,000,000 compensatory damages, and $5,000,000 exemplary damages; for costs and attorney's fees.

Kevin Jones, Plaintiff

By: _____
CHARLES SIDNEY GIBSON, #70027

_____
CHUCK GIBSON, #90030

**Gibson Law Office**
103 N. Freeman
P. O. Box 510
Dermott, AR  71638
Telephone: (870) 538-3288
Facsimile:  (870) 538-5029